|   |   |   |
|---|---|---|
| 1 | **UNITED STATES BANKRUPTCY COURT** | |
| 2 | **DISTRICT OF ARIZONA** | |

In re: ) Chapter 7 Proceedings
)
**WENDI M. CASTELLANOS**, ) Case No.: 2:14-bk-08206-DPC
         Debtor. )
) Adversary No. 2:14-ap-00726-DPC
)
)
)
**MARIO JUAREZ**, ) **ORDER GRANTING DEBTOR'S**
         Plaintiff, ) **CROSS-MOTION FOR SUMMARY**
) **JUDGMENT**
    v. )
)
**WENDI M. CASTELLANOS**, )
         Defendant. )
)
)

Wendi Castellanos ("Debtor") filed a chapter 7 voluntary petition ("Petition") on May 29, 2014 (Admin. DE 1). Plaintiff filed this adversary proceeding against Debtor on August 29, 2014 (DE 1),[1] seeking a judgment that certain debts in Debtor's bankruptcy case were nondischargeable under 11 U.S.C. § 523(a)(15).[2] On January 29, 2015, Plaintiff moved for summary judgment (DE 17) ("Motion") on his First Amended Complaint ("FAC") (DE 15). Debtor filed a Response and Cross-Motion for Summary Judgment (DE 21) on February 27, 2015 ("Cross-Motion"). Plaintiff filed a Reply supporting his Motion (DE 25), to which Debtor replied (DE 27).[3] The Court heard oral argument on the Motion and Cross-Motion (collectively "Motions") on May 4, 2015, after which it ordered additional briefing and argument on: (1) the effect of the parties' annulment under Arizona law; and (2) Plaintiff's exposure on one of the disputed debts, for which he did not sign the note. After the additional briefing and argument, the Court

---

[1] All docket entry numbers refer to the entry in the adversary proceeding unless noted otherwise.
[2] All section references refer to Title 11 of the United States Code unless noted otherwise.
[3] Debtor correctly notes that Plaintiff did not file a separate response to the Cross-Motion. Debtor treats Plaintiff's Reply as a combined reply in support of Plaintiff's Motion and as a response to Debtor's Cross-Motion.

1

took the matter under advisement. The Court now grants Debtor's Cross-Motion and dismisses the FAC with prejudice.[4]

**Background**

Plaintiff and Debtor married each other on February 25, 2012. Plaintiff filed a Petition for Dissolution of Marriage in state court on June 7, 2013. On February 28, 2014, the state court entered a Consent Decree of Annulment ("CDA") (DE 15-2). The CDA states: "Pursuant to A.R.S. § 25-301, misrepresentations were made prior to the marriage that constitute an impediment rendering the marriage null and void." CDA at 3, ¶ 11 (FAC Ex.1, DE 15-2). The CDA goes on to order, adjudge, and decree that "[t]he marriage of the [Debtor and Plaintiff] is hereby annulled, rendering the marriage null and void and returning each party to the status of a single person." *Id.* at 4, ¶ 1. Both parties signed off on the statement "I agree that our marriage is null and void." *Id.* at 9, ¶ 5.

The CDA also divides property and debt between Plaintiff and Debtor. Specifically, the CDA states that Debtor would keep the parties' 2012 federal tax refund and any vehicles in her possession. *Id.* at 5, ¶ 2. As to debts, the CDA states:

> "[Debtor] is assigned and shall hold [Plaintiff] harmless from the following debts: … ii. The debt from the lease of the residence … iii. The debt from the 2011 BMW 535i. iv. Except as specifically stated otherwise, wife shall be solely responsible for any and all debt obligations in her name only."

*Id.* at 6, ¶ 4.d.

On December 13, 2013, the landlord/creditor associated with the residential lease debt ("Lease Debt") sued Plaintiff and Debtor in small claims court. Plaintiff filed his answer and cross-claim to the small claims complaint on May 28, 2014, seeking to

---
[4] The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(b).

enforce the CDA's hold-harmless clause against Debtor. Debtor filed her Petition the next day, on May 29, 2014. In the Petition, she lists Plaintiff as a co-debtor on a number of debts, including the Lease Debt.

**The Parties' Arguments**

In his Motion, Plaintiff argues that there is no dispute as to any material fact. Plaintiff asserts that under the terms of the CDA, Debtor agreed to hold him harmless on the Lease Debt and BMW Debt. Plaintiff argues that those debts are nondischargeable under section 523(a)(15) as a matter of law, because: (1) they are not debts of the kind described in section 523(a)(5); (2) he is Debtor's former spouse; and (3) Debtor incurred the debts "in connection with a separation agreement, divorce decree or other order of a court of record . . . ." 11 U.S.C. § 523(a)(15). Plaintiff argues that the CDA is an "other order of a court of record," and that all the elements for nondischargeability under section 523(a)(15) are met.

Debtor argues the annulment had the effect of making it as if the parties never married, citing *United States v. Hernandez-Arias*, 757 F.3d 874, 882 (9th Cir. 2014) ("The legal effect of an annulment is to return the parties to the status of individuals who were never married to each other.") and *State ex rel. Dept. of Econ. Sec. v. Demetz*, 130 P.3d 986, 988, 212 Ariz. 287 (Ariz. App. 2006) ("[A]n annulment decree invalidates a marriage from its inception, thereby establishing that the marital status never existed.") (citation omitted). Because the annulment had this effect, the relevant debts are not debts "to a former spouse," as section 523(a)(15) requires for nondischargeability. Debtor also argues that Plaintiff's FAC is moot as to the BMW Debt because Plaintiff did not sign the note and he could not be liable under Arizona community property law because the annulment relates back to void and nullify the marital community from its inception. Debtor agrees that the parties do not dispute any material fact.

At oral argument, the parties disagreed on whether the marriage was absolutely void, *void ab initio*, or merely voidable. Plaintiff argued that the marriage was merely voidable, that voidable marriages are not *void ab initio*, and that the CDA merely voided a voidable marriage. Plaintiff denied that the CDA related back to make it as if the parties never married. Debtor responded that Arizona law is unambiguous on its face in stating that annulled marriages are null and void, that the CDA rendered the parties marriage void, and that annulled marriages are *void ab initio* under Arizona law.

**Issue**

The sole legal issue to be resolved by this Court is whether Plaintiff's section 523(a)(15) claim for relief survives a motion to dismiss when, pre-bankruptcy, the parties stipulated to an annulment of their Arizona marriage. This appears to be an issue of first impression in this District.

**Law**

Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the record confirms "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 105 S.Ct. 2548 (1986). Rule 56 applies to bankruptcy adversary proceedings. F. R. Bankr. P. 7056 ("Rule 56 FR Civ P applies in adversary proceedings . . . .").

Arizona Annulment Law

A.R.S. §§ 301 and 302 address marriage annulments. Section 301 states:

> Superior courts may dissolve a marriage, and may adjudge a marriage to be null and void when the cause constitutes an impediment rendering the marriage void.

The statute's use of the word "void" refers to both "void" marriages and "voidable" marriages. *Hodges v. Hodges*, 578 P.2d 1001, 1003, 118 Ariz. 572 (Ariz. App. 1978)

(citation omitted). An annulment generally "relates back to destroy a marriage from the beginning." *Id.* However, courts sometimes refuse to apply this doctrine "as the purposes of justice are deemed to require," such as "where it might adversely affect the rights of innocent third parties." *Id.* (citations omitted). "[A]n annulment decree invalidates a marriage from its inception, thereby establishing that the marital status never existed." *State ex rel. Dept. of Econ. Sec. v. Demetz*, 130 P.3d 986, 988, 212 Ariz. 287 (Ariz. App. 2006) (citation omitted).

<u>Other Districts' Treatment of Annulments and Section 523(a)(15)</u>

The Court could find only a few cases in which other bankruptcy courts have addressed the effect of marriage annulments on section 523(a)(15) actions. Utah Bankruptcy Judge Thurman held that "[u]nder Utah law, an annulment means that the marriage never legally existed," and that "[t]he annulment invalidated the marriage, and accordingly, the Plaintiff does not qualify for relief under § 523(a)(15) . . . ." *In re Ellsworth*, 2014 WL 172414, at *6 (Bankr. D. Utah 2014). South Carolina Bankruptcy Judge Waites refused to find that section 523(a)(15) applied to the debt of a party to an annulled marriage: "Absent some authority suggesting that § 523(a)(15) is to apply to an annulled marriage that has been determined to be *void ab initio*, this Court is not inclined to interpret § 523(a)(15) to include the debt in this case." *In re Talbot*, 1999 WL 33485634 (Bankr. D. S.C. 1999).

**Analysis**

Arizona's marriage annulment statute, the *Demetz* and *Hernandez-Arias* cases, and the very language of the CDA lead this Court to conclude that the CDA is a binding agreement between the parties and order of the state court to treat the parties' marriage as *void ab initio*. The *Talbot* and *Ellsworth* courts' interpretations of their respective states' marriage annulment laws confirm that those laws are similar to Arizona's, in that an annulment relates back to make a marriage *void ab initio*. *See Demetz*, 130 P.3d at

5

Case 2:14-ap-00726-DPC    Doc 34    Filed 06/18/15    Entered 06/18/15 08:59:25    Desc
Main Document      Page 5 of 8

1   988, and *Hodges*, 578 P.2d at 1003.  The Court finds these decisions persuasive and in
2   agreement with its own interpretation of Arizona's marriage annulment statute and its
3   applicability to section 523(a)(15).

4   As the above-cited cases make clear, a marriage annulment is very different from
5   a divorce in legal effect.  Black-letter law also recognizes the distinction between the
6   two: "[A]n annulment renders a marriage void from the beginning, while dissolution of
7   marriage terminates the marriage as of the date of the judgment of dissolution." *Black's*
8   *Law Dictionary* 106 (9th ed. 2009).  Because the CDA relates back to the date of the
9   parties' marriage, Debtor and Plaintiff are not former spouses for legal purposes.
10  Section 523(a)(15) does not apply to the disputed debts for the simple reason that it does
11  not provide for nondischargeability of such debts owed to parties who are neither
12  spouses nor former spouses.

13  Plaintiff's arguments against Debtor's Cross-Motion are unpersuasive.  Plaintiff
14  argues that the marriage was merely voidable, but the authorities cited above effectively
15  refute that assertion.  The entry of the CDA rendered the marriage *void ab initio*.
16  Plaintiff also argues that the CDA falls under section 523(a)(15) as an "other order of a
17  court of record."  This argument ignores the requirement that, under the Code, the debt
18  to be excepted from discharge must be incurred by a spouse or former spouse.  Neither
19  of these two terms describes Debtor's current or prior relation to Plaintiff under
20  Arizona's marriage annulment law or the CDA.  Plaintiff lastly argues that the Court
21  should refuse to apply relation back doctrine because he relied on the CDA and relation
22  back would adversely affect his rights under it, citing *Hodges*, 578 P.2d at 1004–06.
23  While relation back may adversely affect Plaintiff's rights, this argument assumes that
24  Plaintiff is an innocent third party.  This is not the case.  Plaintiff was a party to the
25  CDA, he agreed to the annulment, and he agreed that his marriage to Debtor was null
26  and void.  Plaintiff's failure to consider the annulment's retroactive effect in connection

6

1  with his post-marital financial affairs is not sufficient cause for this Court to treat the
2  annulment as a dissolution. If Plaintiff had wanted a dissolution so that he could seek to
3  except certain debts from Debtor's discharge in a bankruptcy, he could have bargained
4  for a dissolution or sought the court's dissolution order if the Debtor would not bargain
5  with him.

6        The Court is similarly unconvinced that its ruling adversely affects any innocent
7  third parties severely enough to justify applying the "purposes of justice" discussed in
8  *Hodges*. *Id.* The Lease Debt creditor is unaffected by the marriage annulment and it has
9  already sought relief by suing both Plaintiff and Debtor in state court on the lease signed
10 by both parties. As to the BMW Debt Debtor incurred during the parties' now void
11 marriage, BMW could have required both parties to sign the note but chose not to.
12 Although the CDA required the Debtor to pay the BMW Debt, under section 524(a)(3)
13 that debt was discharged on September 5, 2014 (Admin. DE 18). Further, BMW would
14 have no community liability claim against Plaintiff because the CDA retroactively
15 voided the marriage so there never was a marital community. Since Plaintiff did not
16 sign the BMW note, Plaintiff is not solely and separately liable to BMW. Additionally,
17 Debtor has already surrendered the car back to BMW.[5] (May 4, 2015 audio recording of
18 oral argument on Motions, DE 29). The discharge of BMW's potential deficiency claim
19 does not rise to the level of an injustice which would cause this Court to consider going
20 against the general rule that marriage annulments relate back to the date of the marriage.
21 The Court finds there is no dispute over any material fact and Debtor is entitled to
22 summary judgment as a matter of law.
23 . . . .
24 . . . .

---

[5] Interestingly, BMW did not timely file in this bankruptcy case a claim for any deficiency. Not surprisingly, BMW has not sued (and this Court believes, could not sue) Plaintiff since Plaintiff did not incur this debt and his community's liability, if any, has been discharged.

7

**Conclusion**

For the reasons above, the Court grants Debtor's Cross-Motion and denies Plaintiff's Motion, including his request for attorneys' fees. Accordingly,

**IT IS ORDERED** Debtor's Cross-Motion is granted and the FAC is hereby dismissed with prejudice;

**IT IS ALSO ORDERED** Plaintiff's Motion is denied.

**So ordered.**

Dated: June 18, 2015

DANIEL P. COLLINS
CHIEF UNITED STATES BANKRUPTCY JUDGE

COPY of the foregoing mailed by the BNC and/or
sent by auto-generated mail to interested parties.